KANSAS CITY, PITTSBURG & GULF RAILWAY COMPANY
*v.* HOLDEN.

Opinion delivered October 7, 1899.

CARRIER—EJECTION OF PASSENGER.—A railway passenger cannot be ejected from a train for refusal to pay fare if he tenders the fare before any effort is made to stop the train in order to eject him; nor can he be ejected at all save at some usual stopping place. (Page 605.)

Appeal from Polk Circuit Court.

WILL P. FEAZEL, Judge.

STATEMENT BY THE COURT.

Appellee sued appellant for damages for alleged wrongful ejection from its train. Holden boarded appellant's train at Hatton, a mail station on its railroad, and entered the coach. Janssen is a station on appellant's road several miles north of Hatton, and DeQueen is a station some distance south of Hatton. Hatton was not a passenger station. Trains only slowed up there for the purpose of taking on mail. They were not allowed to stop and take on passengers there. When Holden entered the coach, he sat in a seat facing two passen-

gers who had bought tickets at Janssen from Janssen to De-Queen. One of these, when Holden sat down, placed a hat check in Holden's hat. He said he did it "just for a joke." When the conductor came to Holden and demanded his fare, Holden insisted that he had given the conductor a ticket from Janssen to DeQueen, exhibiting the hat check. The conductor looked through his tickets, and found no such one, and told Holden he knew he didn't get on at Janssen. They continued disputing about it until the train had run perhaps fifteen miles, when the conductor told Holden he was trying to beat him, and stopped the train and ejected Holden.

There was some proof to the effect that Holden pulled out of his pocket some silver, as much as three dollars, before the conductor pulled the bell cord to stop the train, and that Holden offered to pay his fare before the bell cord was pulled and before the train was stopped, but that the conductor refused to take it, saying according to Holden: "Damn you, I knowed you got on at Hatton, and your money ain't no good to you now." There was also evidence to justify the conclusion that the conductor at the time he ejected Holden was quite angry; that he took hold of Holden by the collar of his coat, and put his hands on Holden's shoulders, and pushed him out of train, Holden protesting that he had money to pay his fare. There was evidence also to the effect that Holden went upon the train intending and prepared to pay his fare.

There was a jury trial and a verdict for plaintiff in the sum of $50; also an attorney's fee of $50 was taxed as a part of the costs.

*Trimble & Braley, Jno. A. Eaton* and *H. L. Norwood,* for appellant.

Appellee was a mere trespasser, and appellant owed him no greater duty than that of not injuring him by gross or wilful negligence. 81 Ill. 245; 85 Ill. 80; 64 Ia. 48; 8 Kas. 505; 82 Ill. 427. One who refuses to pay fare and comply with the reasonable regulations of the carrier is a trespasser. 4 Fed. App. 413; 30 N. E. 1106; 28 Ind. 1. When a person boards a train at a place other than the proper one for the purpose, he does not become a passenger until he is accepted

by the carrier with the knowledge of the place of his offering himself.   44 Am. & Eng. Ry. Cas. 360; S. C. 19 Ore. 354; 24 Pac. 238; 68 Miss. 643; 10 So. Rep. 60; 31 Ill. App. 460; 58 Am. & Eng. Ry. Cas. 1; 161 Mass. 298; 37 N. E. 165.   One desiring passage must present himself at the proper place and to the proper conveyance of the carrier.   66 Ga. 252; 91 Tenn. 428; S. C. 19 S. W. 232; 45 Fed. 448.   The statute prohibiting the ejection of persons *for refusal to pay fare* at other than regular stopping places does not apply to cases where, through fraudulent imposition on the carrier or other improper conduct, the passenger gives the carrier a right to eject him.   For any offense against its reasonable regulations, other than that set out in the statute, the carrier has its common-law right of ejecting the passenger at any safe place. 49 Ark. 437; 34 Am. & Eng. Ry. Cas. 507; S. C. 16 Pac. 937; 19 Mich. 305; 37 Am. & Eng. Ry. Cas. 100; S. C. 25 Fla. 40; S. C. 5 So. 633; 68 Ind. 586; 34 Am. Rep. 277; 34 Am. & Eng. Ry. Cas. 359; 39 Minn. 3; 38 N. W. 625; 22 R. R. Cas. 402; 34 Minn. 210; 25 N. W. 349; 43 Ill. 420; 27 Am. & Eng. Ry. Cas. 98; 69 Ia. 15; 28 N. W. 410; 1 Ill. App. 472.   Persons intending to take passage on trains must apply at the proper place.   52 Am. & Eng. Ry. Cas. 351; 8 Utah, 165; 30 Pac. 366; 44 Am. & Eng. Ry. Cas. 360; 19 Ore. 354; 68 Miss. 343; 10 So. 60; 31 Ill. App. 460; 91 Tenn. 428; 19 S. W. 232; 45 Fed. 448.   Having no right on the train, plaintiff cannot complain of the manner of his ejection. 47 Ia. 82; 29 Am. Rep. 458.   The tender of fare by appellant came too late.   52 Ia. 342; S. C. 3 N. W. 121; 52 Am. & Eng. Ry. Cas. 324; S. C. 88 Ga. 529; S. C. 15 S. E. 13; 40 Am. & Eng. Ry. Cas. 649; S. C. 104 N. C. 312; S. C. 10 S. E. 556; 13 Am. & Eng. Ry. Cas. 31; S. C. 39 Oh. St. 444; 101 N. Y. 367; S. C. 54 Am. Rep. 699; S. C. 26 Am. & Eng. Ry. Cas. 185; 6 Am. & Eng. Ry. Cas. 327; S. C. 132 Mass. 116; S. C. 42 Am. Rep. 432; 16 Am. & Eng. Ry. Cas. 374; S. C. 9 Lea, 180; S. C. 42 Am. Rep. 668; S. C. 42 Fed. 787; 44 Am. & Eng. Ry. Cas. 402; S. C. 44 Kas. 394; 24 Pac. 500; 47 Ia. 82; 29 Am. Rep. 458; 15 Gray, 20; 77 Am. Rep. 347.

WOOD, J., (after stating the facts.)   The verdict settled

the controverted questions of fact in favor or appellee. Evidently the jury were justified in coming to the conclusion that, if Holden had paid his fare promptly on the demand of the conductor, he would have been accepted and permitted to ride as a passenger, notwithstanding he boarded the train at Hatton, where passengers were not received. The mere fact of his getting on at Hatton, therefore, made no difference. The conductor did not object to that, for, after being informed that Holden had boarded the train at Hatton, he elected to treat him as any other passenger, and demanded of him his fare. The conclusion seems warranted from the proof that it was only the persistent refusal of Holden to pay his fare and the aggravating circumstances thereof, and not the fact of his having boarded the train at Hatton, that caused his ejection. The conduct of Holden was exceedingly reprehensible. Those who go upon trains for the purpose of becoming passengers thereon, to enjoy the privileges and be entitled to the benefits and protection of passengers, must conform to the reasonable requirements of the carrier in regard to the payment of fare for transportation. One who enters a train with the *bona fide* intention of paying his fare but who wilfully and unnecessarily from whatever motive, delays the conductor in the collection thereof beyond the time required for the convenient and orderly dispatch of the carrier's business in that particular may, if he persists until an effort is being made to stop the train, be treated as refusing to pay fare, and ejected from the train for that reason. Hutchinson, Carriers, 587 *et seq;* 4 Elliott, Railroads, § 1637; 1 Fetter, Carriers of Passengers, § 314.

A systematic and orderly dispatch of the business of common carriers of passengers by railways, so as to be conducive to the comfort and convenience of the traveling public, would not be at all compatible wlth a capricious, wilful or unnecessary delay upon the part of one or more passengers in the matter of the payment of fare for transportation. Railroads "are entitled to the payment of full fare upon demand." The moment the passenger declines after reasonable opportunity has been given to pay, the carrier is released from all obligation to carry him. *Hoffbauer* v. *D. & N. Ry. Co.*, 52 Ia. 342. See

note to *Stone* v. *Ry. Co.*, 29 Am. Rep. 458; 1 Felter, Carriers of Passengers, § 314.

The jury were justified in concluding that Holden went upon appellant's train with the intention of becoming a passenger, and of ultimately paying his fare. The conductor, waiving the place of his getting on, offered to accept him as a passenger by demanding his fare for transportation, and by permitting him to ride several miles as a passenger, and, by not treating him as a trespasser *ab initio*, and ejecting him immediately for getting on at an improper place for the reception of passengers. Having done all this, without taking any steps to eject him until (as the jury found) he had offered to pay his fare, the conductor could not then eject him.

"According to the weight of authority, and the better reason," says Judge Elliott, a passenger who has persistently refused to pay his fare or procure a ticket cannot gain a right to be carried and make the expulsion unlawful by a tender of the fare after the conductor has begun to expel him." Elliott, Railroads, § 1637, and authorities cited. In this case the jury might have found that the conductor did not begin to expel Holden until after he had tendered his fare. He therefore had no right to expel him. But if we were wrong about this, and the peculiar circumstances of Holden's refusal to pay his fare for so long justified his ejection, still the judgment was correct; for, under our statute, after the conductor had elected to treat Holden as a passenger, he could not thereafter eject him except at some usual stopping place selected by the conductor. Sand. & H. Dig., § 6192. Then the conductor would be justified in using whatever reasonable force might be necessary and proper to eject the recusant passenger; but the passenger, although in the wrong, would still be entitled to protection against unnecessary and wanton violence or insult. Hutchinson, Carriers, § 580g; 4 Elliott, Railroads, § 1637.

As a judgment against the railroad is inevitable from what we have said, it becomes wholly unnecessary to discuss objections to the instructions of the trial court, and its judgment is affirmed.